IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

KITTY S. LOTT                                                                    PLAINTIFF

v.                                CIVIL NO. 06-5086

MICHAEL J. ASTRUE,[1] Commissioner
Social Security Administration                                           DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff Kitty S. Lott brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act).

**Procedural Background:**

The applications for DIB and SSI presently before this court were filed on September 4, 2003, alleging an inability to work since June 2, 2002,[2] due to Hepatitis, chronic fatigue, back and left hip pain, breathing problems and depression. (Tr. 50-52, 258-260). An administrative hearing was held on December 6, 2005. (Tr. 261-274). Plaintiff was present and was assisted by a representative.

---

[1] Michael J. Astrue became the Social Security Commissioner on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue has been substituted for acting Commissioner Jo Anne B. Barnhart as the defendant in this suit.

[2] We note in the prehearing memorandun plaintiff's counsel indicates plaintiff's alleged onset date is September 1, 2003. (Tr. 100).

AO72A
(Rev. 8/82)

By written decision dated January 26, 2006, the ALJ found that plaintiff has an impairment or combination of impairments that are severe. (Tr. 19). However, after reviewing all of the evidence presented, he determined that plaintiff's impairments do not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 19). The ALJ found plaintiff retained the residual functional capacity (RFC) to lift/carry twenty pounds occasionally, ten pounds frequently; to push and/or pull the same amount; to stand/walk six hours during an eight-hour workday; to sit two hours in an eight-hour workday; and to bend occasionally. The ALJ further found plaintiff must avoid concentrated exposure to dust, fumes, odors, gases and poor ventilation. (Tr. 19). With the help of vocational expert testimony, the ALJ determined plaintiff could perform other work as an office clerk, a packager and a production worker.

Plaintiff appealed the decision of the ALJ to the Appeals Council. Plaintiff's request for review of the hearing decision by the Appeals Council was denied on April 4, 2006. (Tr. 3-5). When the Appeals Council declined review, the ALJ's decision became the final action of the Commissioner. Plaintiff now seeks judicial review of that decision. (Doc. #1). Both parties filed appeal briefs and this case is before the undersigned for report and recommendation. (Doc. # 8, 11).

**Evidence Presented:**

At the administrative hearing on December 6, 2005, plaintiff was forty-six years of age and obtained a general equivalency diploma and one year of college education. (Tr. 263). Plaintiff testified she last worked, as a motel housekeeper, in June of 2002. (Tr. 265). Plaintiff

reported she had to leave her job because she was unable to perform her work duties due to back pain. (Tr. 265).

Plaintiff testified that she was unable to work due to her Hepatitis C. (Tr. 266). Plaintiff reported that she also did not sleep well, ached a lot and was fatigued. (Tr. 266). Plaintiff testified that she also throws up three to four times each night. (Tr. 267).

With regard to physical activities, plaintiff testified that she thought she would be able to bend occasionally. (T. 268). Plaintiff testified that her doctor told her not to lift over twenty pounds. (Tr. 269). Plaintiff testified that she was not able to sit for long periods of time. (Tr. 270-271).

When asked how she is able to support herself, plaintiff testified her rent is exempt and that she receives food stamps and some assistance from her daughter. (Tr. 265).

Mr. Paul Westburg, a vocational expert, testified plaintiff's past relevant work consisted of medium, unskilled labor. (Tr. 271). After listening to the ALJ's hypothetical question (Tr. 271), Mr. Westburg testified the hypothetical individual would be able to perform work as an office clerk, a packager and a production worker. (Tr. 272).

The pertinent medical evidence reflects the following. In June of 2001, a chest x-ray revealed course markings throughout both lungs compatible with chronic airways inflammatory disease seen in asthma or chronic smoking. (Tr. 194). Dr. Shane McAllister also noted a parenchymal density and recommended plaintiff follow-up in three to four weeks. No free pleural fluid or congestive heart failure was noted.

On August 1, 2001, an x-ray examination of plaintiff's lumbosacral spine was normal. (Tr. 181). Treatment notes further indicate plaintiff needed to see a gastroenterologist. (Tr. 182).

Notes dated August 31, 2001, indicate plaintiff was to have an appointment with a gastroenterologist on September 12th. (Tr. 179, 185).

On June 12, 2002, plaintiff complained of pain in the upper right side of her chest making it difficult to breathe. (Tr. 186). Plaintiff reported she had been painting and the symptoms began when she was cleaning up her equipment. Plaintiff was diagnosed with right pneumonia versus tumor and was instructed not to work until her release. She was schedule for a follow-up appointment on June 14th.

On September 30, 2002, plaintiff went to the Washington Regional Medical Center (WRMC) emergency room complaining of back pain, a cough, and shortness of breath. (Tr. 208-210, 244-246). Plaintiff reported she had been helping a friend clean an old house. (Tr. 208). A physical examination showed that plaintiff had some back pain on range of motion and spinal tenderness, but no costovertebral angle (CVA) tenderness or scoliosis. (Tr. 208). The examination also showed that plaintiff's gait was normal; that she had no cyanosis, clubbing, or edema in her extremities; and that she had normal breathing sounds and no respiratory distress. (Tr. 208). A review of plaintiff's respiratory system revealed a non-productive cough but no shortness of breath, wheezing, or hemoptysis. (Tr. 209). Plaintiff was diagnosed with upper back/shoulder strain and given prescriptions for Lortab and Soma. (Tr. 245). Plaintiff was instructed to follow-up with her primary care provider or to return to the emergency room if her condition worsened.

On January 2, 2004, Plaintiff went to the WRMC emergency room complaining of hand cramps, anxiety and palpitations. (Tr. 196-203). Plaintiff reported she had been under a lot of stress. (Tr. 200). Plaintiff further reported that her liver had been bothering her. (Tr. 196).

Plaintiff reported she drank approximately one pint of whiskey and smoked one package of cigarettes a day. A physical examination showed a non-tender chest with normal breath sounds, no CVA tenderness of the back, no cyanosis, clubbing, or edema of the extremities, and a normal gait. (Tr. 200). Dr. Sam Turner noted plaintiff had a normal affect, normal judgment and insight and normal remote and recent memory. Plaintiff was diagnosed with hyperventilation, alcohol abuse and history of hepatitis. (Tr. 202). Dr. Turner suggested plaintiff follow-up with a gastroenterologist. (Tr. 203).

On March 19, 2004, a pulmonary function report showed a mild obstructive pulmonary impairment (Tr. 214-219). The report revealed plaintiff may not benefit from continued bronchodilator therapy.

On April 12, 2004, plaintiff underwent a consultative general physical examination performed by Dr. Tad Morgan. At the time of the evaluation, plaintiff's medication consisted of an albuterol inhaler used on an as needed basis. Plaintiff also reported that she had smoked one package of cigarettes a day since she was fifteen years of age. Dr. Morgan reported that plaintiff had no cardiovascular problems or chest pain; that she had normal breathing sounds in her lungs; and that her lungs were without increased anteroposterior (AP) diameter, hyperresonance, prolonged expiration, and wheezing. (Tr. 221-222). Dr. Morgan indicated that plaintiff had only mild osteoarthritis of the lower back and left hip; that she had full range of motion of her cervical and lumbar spine, a normal straight-leg raising test, and full range of motion of her upper and lower extremities. (Tr. 222-223). Dr. Morgan noted that plaintiff was neurologically intact; that she had no muscle weakness, atrophy, or sensory abnormalities; that her gait and coordination were normal; and that she could stand and walk without assistive devices, walk on her heels and

toes, and squat and arise from a squatting position. (Tr. 224). Dr. Morgan reported that plaintiff could hold a pen and write, touch her fingertips to her palms, oppose her thumbs to her fingers, pick up a coin, and grip with 100% grip strength. (Tr. 224). Dr. Morgan concluded that plaintiff had no limitations. (Tr. 226).

On August 3, 2004, plaintiff complained of coughing, vomiting and hip pain. (Tr. 230). Treatment notes indicate plaintiff had applied for disability due to hepatitis, fatigue and depression. Dr. Pearson noted plaintiff's gait was normal. Dr. Pearson's assessment states smoker, upper respiratory infection versus allergy and hip pain. Plaintiff was instructed to stop smoking, to use better shoes and to take over-the-counter Tylenol and cough medication.

On March 10, 2005, plaintiff complained of sinus congestion, a headache and an ear ache. (Tr. 229). Dr. Ward diagnosed plaintiff with acute sinusitis and possible reactive airway disease.

On October 13, 2005, plaintiff entered the WRMC emergency room complaining of nasal congestion and a cough. (Tr. 235). Plaintiff reported she drank a pint of whiskey and smoked one package of cigarettes daily. (Tr. 235). Plaintiff was diagnosed with acute sinusitis and bronchitis. (Tr. 236).

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the

Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only

if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of her residual functional capacity. *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. §§ 404.1520, 416.920.

**Discussion:**

We first address the ALJ's assessment of plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir.2003).

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting his determination that plaintiff's complaints were not fully credible. The testimony presented at the hearing as well as the medical evidence contained in the record are inconsistent with plaintiff's allegations of disability.

Plaintiff alleges disabling back and hip impairments. A review of the record reveals plaintiff has not sought consistent and on-going treatment for these impairments. *See Novotny*

8

*v. Chater*, 72 F.3d 669, 671 (8th Cir. 1995) (per curiam) (failure to seek treatment inconsistent with allegations of pain). The record further reveals plaintiff was not taking any pain medication at the time of the hearing in December of 2005. *See Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir. 1994) (lack of strong pain medication was inconsistent with disabling pain); *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (failure to take pain medication is relevant to the credibility determination). Furthermore, at the consultative examination in April of 2004, Dr. Morgan found plaintiff had a full range of motion of her spine and extremities and had no signs of muscle weakness, muscle atrophy or sensory abnormalities. Based on the evidence as a whole, we find substantial evidence supporting the ALJ's determination that plaintiff does not have disabling back and hip impairments.

The record further reveals plaintiff has been diagnosed with obstructive pulmonary disease. A chest x-ray taken in June of 2001, revealed coarse marking throughout both lungs compatible with chronic airways inflammatory disease. An area of density was also noted and it was recommended that plaintiff follow-up in three to four weeks for a CT scan if the area had not resolved. In September of 2002, a review of plaintiff's respiratory system revealed a non-productive cough but no shortness of breath, wheezing, or hemoptysis. On March 19, 2004, a pulmonary function report showed a mild obstructive pulmonary impairment. In August of 2004, plaintiff sought treatment for coughing, vomiting and hip pain. Dr. Pearson assessed plaintiff with respiratory infection versus allergy and recommended that she stop smoking. In March of 2005, plaintiff was diagnosed with acute sinusitis and possible reactive airway disease. In October of 2005, plaintiff was diagnosed with acute sinusitis and bronchitis. The evidence clearly shows that plaintiff does have a lung impairment. However, the ALJ discussed plaintiff's

diagnoses and pointed out that with the exception of environmental limitations nothing in the record shows plaintiff has limitations due to a lung impairment. The ALJ further points out the despite repeated recommendations to stop smoking, plaintiff continued to smoke throughout the relevant time period. *See Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997) (claimant refused to quit smoking despite physician's repeated recommendations); *Guilliam v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) (failure to follow a recommended course of treatment weighs against credibility)

Although plaintiff contends that her failure to seek medical treatment, specifically the appointment with the gastroenterologist, is excused by her inability to afford treatment, plaintiff has put forth no evidence to show that she has been denied treatment due to her lack of funds. *Murphy v. Sullivan*, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship). Furthermore, evidence reveals plaintiff continues to smoke almost a package of cigarettes daily. As such, we cannot say that her financial situation prevented her from receiving medical treatment.

As for plaintiff's Hepatitis, the record reveals plaintiff has worked despite having this impairment. *Gowell v. Apfel*, 242 F.3d 793, 798 (8th Cir. 2001) (claimant worked with her impairments for years). Plaintiff contends that while she could work despite this diagnosis in the past, she is not longer able to work because her symptoms of fatigue, vomiting and pain have worsened. This worsening of her condition due to Hepatitis is not reflected in the record. Therefore we find substantial evidence supporting the ALJ's determination that plaintiff can work despite having been diagnosed with Hepatitis.

10

Plaintiff also alleges disabling depression. A review of the record reveals no evidence that plaintiff sought on-going or consistent treatment from a mental health professional on her own accord or through the referral of another physician. *See Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against plaintiff's claim of disability). In fact, plaintiff indicated numerous times that she had not sought treatment for emotional or mental problems. (Tr. 61, 74, 86). We find substantial evidence of record supporting the ALJ's determination that plaintiff does not have a severe mental impairment.

Plaintiff's reports concerning her daily activities are also inconsistent with her claim of disability. At the administrative hearing in December of 2005, plaintiff testified she could lift up to twenty pounds and bend occasionally. She also indicated she could sit but would need to get up and walk around. In a Supplemental Interview Outline dated September 4, 2003, plaintiff reported she was able to take care of her personal needs; to perform household chores; to shop and do errands; to prepare simple meals; to pay bills, use a checkbook and count change; to drive, use public transportation and walk for errands and exercise; and to watch television, listen to the radio, read, draw and do arts and crafts. (Tr. 68-69). This level of activity belies plaintiff's complaints of pain and limitation and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a plaintiff's subjective allegations of disabling pain. *Cf. Gray v. Apfel*, 192 F.3d 799, 804 (8th Cir. 1999) (plaintiff's ability to care for himself, do household chores, drive a car short distances, and perform other miscellaneous activities was inconsistent with his subjective complaints); *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ALJ properly discounted claimant's subjective complaints on basis that claimant was able to care for child,

11

drive car, and sometimes go to grocery store); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television and drive indicated her pain did not interfere with her ability to concentrate; claimant's visits with her children indicated she could engage in some social functioning).

In forms regarding her applications for disability, plaintiff reported that she applied for and received unemployment benefits during part of the time she has alleged she was disabled. (Tr. 79). We note "[a] claimant may admit an ability to work by applying for unemployment compensation benefits because such an applicant must hold himself out as available, willing and able to work." *Jernigan v. Sullivan,* 948 F.2d 1070, 1074 (8th Cir.1991).

Therefore, although it is clear that plaintiff suffers with some degree of pain, she has not established that she is unable to engage in any gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning her daily activities support plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

We will next discuss the ALJ's RFC determination. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 416.945(a)(1). A disability claimant

has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliam v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

In finding plaintiff able to perform a significant range of light work, the ALJ considered plaintiff's subjective complaints, the medical records of her treating physicians, and the evaluations of a consultative. Plaintiff's capacity to perform this level of work is supported by the fact that plaintiff's examining physicians placed no restrictions on her activities during the relevant time period that would preclude a significant range of light work. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability). Based on all of the evidence contained in the file, we find substantial evidence supporting the ALJ's RFC determination

Finally, we find that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d

13

294, 296 (8th Cir. 1996). Accordingly, we find that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that plaintiff's impairments do not preclude her from performing other work as an office clerk, a packager or production worker. *See Pickney*, 96 F.3d at 296 (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence). We note that plaintiff argues that the vocational expert indicated that the jobs as office clerk, packager and production worker are unskilled but the Dictionary of Occupational Titles lists these jobs as semi-skilled. A review of the record fails to establish that with the RFC found plaintiff would not be able to perform these jobs.

**Conclusion:**

Based on the foregoing, we recommend affirming the ALJ's decision and dismissing plaintiff's case with prejudice. **The parties have ten days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 2nd day of April 2007.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)